```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
 2
                                      )
 3   UNITED STATES OF AMERICA,        )   1:22-mj-00846-TAM-1
                                      )
 4                  Plaintiff,        )   Brooklyn, NY
                                      )
 5                  vs.               )   August 9, 2022
                                      )   3:43 PM
 6   WILLIAM SWIFT,                   )
                                      )
 7                  Defendant.        )


 8                   TRANSCRIPT OF ARRAIGNMENT HEARING
 9                 BEFORE THE HONORABLE TARYN A. MERKL
                     UNITED STATES MAGISTRATE JUDGE
10
     APPEARANCES:
11
     For the Plaintiff:          GILBERT REIN, AUSA
12                               DOJ-USAO
                                 Eastern District of New York
13                               271 Cadman Plaza East
                                 Brooklyn, NY 11201
14
     For the Defendant:          NORA K. HIROZAWA, ESQ.
15                               FEDERAL DEFENDERS OF NEW YORK
                                 One Pierrepont Plaza
16                               Suite 16th Floor
                                 Brooklyn, NY 11201
17
     ECR OPERATOR:               NO NAME PROVIDED
18


19


20


21                    Rachel Wiley, CET**D-251
                            eScribers, LLC
22                       7227 North 16th Street
                           Phoenix, AZ 85020
23                         www.escribers.net


24   Proceedings recorded by electronic sound recording; transcript
     produced by transcription service.
25
```



Colloquy

1          THE CLERK:  Criminal cause for arraignment, case

2   number 22-846-TAM, United States v. William Swift.

3          Counsel, please state your name for the records.

4          MR. GILBERT REIN:  Good afternoon, Your Honor.

5   Gilbert Rein for the United States.

6          MS. NORA HIROZAWA:  And good afternoon, Your Honor.

7   Nora Hirozawa, Federal Defenders on behalf of Mr. Swift, who is

8   on my side.

9          THE COURT:  Good afternoon to you both.

10          And good afternoon to you as well, Mr. Swift.  My name

11   is Judge Taryn Merkl.  And you're here today because you have

12   been charged with a crime in a criminal complaint.

13          Ms. Hirozawa, do you have a copy of the complaint?

14          MS. HIROZAWA:  Yes, Your Honor.

15          THE COURT:  And have you provided it to Mr. Swift?

16          MS. HIROZAWA:  Yes.

17          THE COURT:  So in the criminal complaint, sir, you are

18   charged with knowingly and intentionally transmitting threats

19   in interstate and foreign commerce to various people mentioned

20   in the complaint as Jane Doe, John Doe 1, John Doe 2, John Doe

21   3, and John Doe 4.  And those complaints are alleged to have

22   been communicated via email and other formats between February

23   and June of this year.

24          The purpose of the proceeding here today is to advise

25   you of certain rights that you have to make sure that you are



Colloquy

1    informed about the charge against you and to decide under what

2    conditions, if any, you should be released pending trial in

3    this case or whether you should be detained in jail.  First,

4    I'm going to go over your rights.  It's important for you to

5    understand that you have the right to remain silent.  You are

6    not required to make any statements.  If you have started to

7    say something, you may stop at any time and you do not need to

8    make any further statements.  But what you must understand is

9    that any statements that you make to anyone except for Ms.

10   Hirozawa and your legal team, any statements to anybody else

11   could be used against you.  Mr. Swift, do you understand that?

12            THE DEFENDANT:  Yes, Your Honor.

13            THE COURT:  You also have the right to be represented

14   by an attorney during all court proceedings, including this

15   one, and during any questioning by the authorities.  I have

16   before me a financial affidavit, which I have reviewed, that

17   does suggest that you qualify for court-appointed counsel.  So

18   for purposes of today's proceeding and all future proceedings

19   in this case, the Court has appointed Ms. Hirozawa and the

20   Federal Defender represent you.  Do you understand, Mr. Swift,

21   that you have the right to be represented by counsel from this

22   point forward?

23            THE DEFENDANT:  Yes.

24            THE COURT:  I need you to speak up.

25            THE DEFENDANT:  Yes, Your Honor.



                              Colloquy

1            THE COURT:  Thank you.

2            And Mr. Rein, is there any indication that this

3    defendant is not a U.S. citizen?

4            MR. REIN:  No, Your Honor.

5            THE COURT:  All right.  I got no implication of that

6    from pre-trial report or otherwise.  And have the victims in

7    this case been notified of Mr. Swift's arrest?

8            MR. REIN:  Judge, they have.  The Government and the

9    FBI have spoken to two of them, have made attempts to contact

10   the other ones.  But they have been notified that he's been

11   arrested and that this proceeding would be happening and

12   there'd be a question of detention or release.

13           THE COURT:  Okay.  Thank you.

14           So as I noted, I have before me a complaint containing

15   the charge against you.  As I mentioned, the charge is at this

16   time one charge, it is interstate communication of threats of

17   bodily injury and death to five different individuals.

18           Ms. Hirozawa, have you reviewed the complaint with

19   your client?

20           MS. HIROZAWA:  I have, Your Honor.

21           THE COURT:  Have you advised him of his rights in

22   connection with this case?

23           MS. HIROZAWA:  Yes, Your Honor.

24           THE COURT:  Are you satisfied that your client

25   understands the charge?



Colloquy

 1          MS. HIROZAWA:  Yes, Your Honor.

 2          THE COURT:  Is that right, Mr. Swift?  Do you

 3     understand what you've been charged with?

 4          THE DEFENDANT:  Yes, Your Honor.

 5          THE COURT:  Okay.  I'd now like to turn to the

 6     question of pre-trial release.  The Government has submitted a

 7     detention memorandum in this case, which I have received and

 8     reviewed.

 9          Is there anything else you'd like to put on the

10     record, Mr. Rein?

11          MR. REIN:  Judge, I have submitted that detention

12     memorandum.  I would like to say just briefly, the --

13     obviously, the nature and circumstances of this case are such

14     that the very crime itself is the threatening of victims in

15     this case.  And when the Government spoke with Jane Doe and

16     informed her that the defendant had been arrested, she was very

17     relieved.  And she also wanted the Government to impress upon

18     Your Honor that she would like him detained, especially because

19     the threats in this case are directed at a specific event,

20     which is to occur in New York State at the end of this month.

21     And so the victims, especially Jane Doe, are very concerned

22     about the integrity of that event being able to take place,

23     given the defendant's threats.

24          And as Your Honor knows, the threats where shooting,

25     stabbing, hitting people in the head with a hammer.  In fact,

Colloquy

1    and I alluded to this in the memo I submitted to the Court,

2    just over this past weekend there were additional

3    communications between the defendant and others associated with

4    the Woodstock Fruit Festival, which is the event I'm talking

5    about where he indicated that a group picture would be a

6    perfect opportunity to commit a mass shooting.  And so

7    obviously, this ideology has continued up and to essentially

8    the present.  I'm informed by the agents who executed a search

9    warrant this morning that hammers and screwdrivers were found

10   in the defendant's residence along with several pocket knives.

11   And those, obviously, were things that were mentioned in the

12   threats in this case.

13            And so for all these reasons, we believe that the

14   weight of the evidence in this case is strong.  In addition to

15   the items I mentioned that were seized, the FBI seized a

16   computer and a cell phone.  So we believe that the evidence in

17   this case will only get stronger and it will only add to the

18   communications that the Government already possesses, which are

19   audio recordings and emails.

20            As I mentioned in my memo, the defendant is a self-

21   described incel, which is, I understand to mean involuntary --

22   involuntarily celibate.  And it's a movement that the

23   Government understands to be directed toward women and hatred

24   toward women.  And particularly in this case, the primary

25   victim is a woman, Jane Doe.  And the defendant has said in his



Colloquy

1   threats some very sexually explicit and depraved things about

2   Jane Doe.  So the Government has significant concerns that if

3   the defendant is released, he'll try to follow through on the

4   threats that have been outlined both in the detention memo and

5   the complaint.

6          In particular, I want to just reiterate the fact that

7   the Government possesses and provided to the Court and Counsel

8   a message sent by the defendant to another person affiliated

9   with the Woodstock Fruit Festival saying that if he was

10  arrested he would kill Jane Doe.  And obviously, now he's been

11  arrested.  When -- the Government believes that, when the

12  defendant says something like that, we should take him at his

13  word, and we suggest that the Court do that as well.  And as I

14  mentioned, the victims in this case that we've been able to

15  notify thus far have said that they have a preference for

16  detention in this case.  So for all those reasons, Judge, we

17  believe that the detention is appropriate.

18         THE COURT:  Can I just ask you a couple of factual

19  questions?

20         MR. REIN:  Yes.

21         THE COURT:  In your detention memorandum, you describe

22  this emails saying, "I'm not afraid of the police.  I could

23  have stabbed you and do an f-ing Ted Bundy".  When were those

24  messages sent?

25         MR. REIN:  The -- one moment, Judge.  The Ted Bundy



Colloquy

1    comment was sent on June 18th, 2022.

2              THE COURT:  Okay.

3              MR. REIN:  The message where he says that he's not

4    afraid of the police, I -- that was said a few times.

5              THE COURT:  Okay.  And then this one --

6              MR. REIN:  Yeah.

7              THE COURT:  -- this screenshot that's --

8              MR. REIN:  Yes.

9              THE COURT:  -- included in your detention

10   memorandum --

11             MR. REIN:  Yes.

12             THE COURT:  -- when was that message sent?  About

13   killing Jane Doe --

14             MR. REIN:  Yes.

15             THE COURT:  -- if he's arrested.

16             MR. REIN:  Yes.  I believe it was sent in June of

17   2022, but please give me one moment to just confer with the

18   agent.

19             THE COURT:  Yes.

20       (Pause)

21             MR. REIN:  Thank you, Judge.  I've been able to review

22   our records briefly and the person who received that message

23   provided it to the FBI on July 7th.  As to when the person

24   actually received the message from the defendant, it's not

25   quite clear from the records I have right now.



Colloquy

 1          THE COURT:  Got it.  Okay.  All right.  Is there

 2   anything else you'd like to add?

 3          MR. REIN:  No, Your Honor.

 4          THE COURT:  Ms. Hirozawa?

 5          MS. HIROZAWA:  Thank you, Your Honor.  I think the

 6   first thing that the Court was inquiring about is one reason

 7   that I think that Mr. Swift should be released, which is that

 8   none of these messages or threats, although I agree that they

 9   are concerning, were followed through on.  And I think that the

10   context --

11          THE DEFENDANT:  I had no gun.

12          MS. HIROZAWA:  He never had a gun.  The threats

13   about --

14          THE DEFENDANT:  (Indiscernible) for self-defense on

15   the subway, which everyone needs here, by the way.

16          MS. HIROZAWA:  Yeah.

17          So I think that -- I recognize that the Government has

18   indicated that there were screwdrivers and other and hammers

19   and other items found at Mr. Swift's home.  I think those are

20   consistent with many household items that might be found at my

21   own home and certainly are not so exclusively consistent with

22   the threats discussed in the complaint that I think it is

23   evidence that he actually planned to follow through with any of

24   the threats that were made over the online communications.

25          Additionally, I would note, as the complaint details,

Colloquy

1   that it appears at least at one point in July that Mr. Swift

2   emailed Jane Doe and stated, "I'm sorry I said such hateful and

3   threatening things to you and the people at WFF.  I will not

4   harm anyone at WFF".  I think these communications are perhaps

5   evidence of Mr. Swift struggling with his own personal issues.

6   And as the pre-trial services report noted, Mr. Swift does

7   struggle with a number of mental health diagnoses, and he does

8   receive disability benefits for those diagnoses.

9        I have consulted with our social work team at my

10  office, and we would be more than happy to work closely with

11  Mr. Swift to ensure that he is getting the support that he

12  needs and to ensure that he doesn't pose a danger to the

13  community.

14       I think one of my biggest concerns regarding the

15  Government's request for detention, which I spoke with Mr. Rein

16  about prior to court, is that based on very recent and

17  extensive personal experience dealing with MDC, their ability

18  to address client psychiatric needs is very limited.  I have a

19  number of individuals who -- a number of clients who I work

20  with who have requested both psych medications as well as

21  therapeutic treatment.  And in one case where Judge Reyes

22  actually ordered MDC to provide therapeutic treatment back in

23  January 2022.  And I believe my client has been seen by the MDC

24  therapist once.  They do not have the capacity or the resources

25  to provide the level of psychiatric treatment that I think Mr.



Colloquy

1    Swift requires.

2              I have received a signed HIPAA from him.  And I am

3    going to be in communication with his mental health provider to

4    ensure that the services he's receiving are appropriate.  And

5    we would agree and recommend that the Court include mental

6    health treatment as a mandatory condition of release.

7              In addition, I think it is notable, and Mr. Swift has

8    mentioned this to me and asked that I share this with the

9    Court, that he has been struggling with his own concerns and

10   feelings of self-hatred in recent months, which led him to use

11   alcohol to excess.  I think that some of this conduct resulted

12   from that, and certainly that is something that we have

13   discussed.  I think it would be really beneficial for him to

14   not use alcohol, in particular to excess, and that's something

15   that he's committed to doing.

16             I know that the pre-trial services report references

17   drug use -- extensive drug use.  I just wanted to note that Mr.

18   Swift actually did, I mean, he had a pretty lengthy period of

19   sobriety from 2013 to 2021.  And during that time, he was also

20   struggling with eating disorders, which I think are related to

21   his OCD diagnosis.  And so all of these, I think, dependencies

22   or addictions I think are interrelated with his mental health

23   diagnoses.  And that's something that me and my social workers

24   are committed to working with him on to ensure that he's able

25   to manage those conditions in a way that is healthy and

Colloquy

1   productive for him, and that also ensures the safety and

2   security of the witnesses -- or potential victims in this case.

3               The other notable appointment that I wanted to raise

4   with the Court is that Mr. Swift does have a surgery scheduled

5   in Rhode Island for the end of this month, I believe August

6   23rd?

7               THE DEFENDANT:  25th.

8               MS. HIROZAWA:  August 25th.

9               THE DEFENDANT:  Which it was paid for yesterday with a

10  credit card.

11              MS. HIROZAWA:  Which he paid for yesterday.  And so he

12  is very much hoping to be able to receive the medical attention

13  that he requires on that date.

14              THE DEFENDANT:  I wouldn't have time to go stab or

15  shoot someone and go see the doctor in Rhode Island.

16              MS. HIROZAWA:  Yeah.

17              And so, Your Honor, I do think that there are

18  conditions of release that can be set in this case.  And I

19  would request that the Court set a 150,000-dollar personal

20  appearance bond, which would be cosigned by Mr. Swift and his

21  mother, Jane Swift (ph.), who is on the line.  She makes

22  approximately, I believe, 197,000 dollars per year.  She works

23  as a clerical assistant for a trucking company.  And she

24  resides in Belford, New Jersey.  If necessary, she said that

25  Mr. Swift would be able to live with her.  He does have a

Colloquy

1    subsidized apartment here in Brooklyn where he would like to

2    continue living to ensure that he doesn't lose that stable

3    housing.  And he would be willing to participate in location

4    monitoring to assuage any concerns that the Government might

5    have.  And additionally, he would be willing to abide by a stay

6    away order from any of the Jane or John Does named in the

7    complaint, which I assume the Court would impose.  And if there

8    are any other conditions that the Court thinks would be

9    appropriate, we're happy to consider and agree to those.

10           THE COURT:  Ms. Hirozawa, the surgery that you

11   mentioned, is that in connection with the situation described

12   at the top of page 3 of the pre-trial services report?

13           MS. HIROZAWA:  That is correct, Your Honor.

14           THE COURT:  Okay.  Given the nature of the procedure

15   described, is that the type of thing that could be rescheduled?

16           THE DEFENDANT:  No.  They took my money.  They say --

17   they took my money.  I'm going to lose my money if I can't go

18   to it.  And it's also a time thing.  So in order -- so it's a

19   reverse -- what it is, it's a vasectomy reversal.  I'm not --

20   and I have had sex, so I'm not an incel.  I guess I just feel

21   like I don't enjoy -- I don't know if I'm saying -- but I'm --

22   the vasectomy reversal can only be reversed within a certain

23   amount of time from the vasectomy.

24           By the way, the festival also promoted vasectomies

25   and --

Colloquy

 1          MS. HIROZAWA:  And --

 2          THE DEFENDANT:  -- I was angry --

 3          MS. HIROZAWA:  -- so --

 4          THE DEFENDANT:  -- at them for --

 5          MS. HIROZAWA:  -- let's --

 6          THE DEFENDANT:  -- promoting vasectomies but --

 7          MS. HIROZAWA:  Yeah, we can --

 8          THE DEFENDANT:  So I'm get -- I'm going -- I'm -- my

 9   plan was to go -- up until being arrested today, my plan was to

10   go to Rhode Island to get a vasectomy reversal, because I --

11   and there's only a certain amount of time that that can be done

12   from the point of vasectomy to the point where it's even

13   possible for it to be reversed, at least according to the

14   doctor and the website and the doctors who perform that sort of

15   thing.  So I think what this kind of proves is that most of

16   what I was saying is just kind of me saying angry, hateful

17   things like extremely angry, hateful things, but not

18   necessarily --

19          THE COURT:  I understand where you're coming from on

20   that, sir.  But I don't find the proposed bail package

21   sufficient, Ms. Hirozawa.  The conduct in this case is very

22   serious and the concerns that I have are many.  The defendant,

23   according to the pre-trial services report, has a history of

24   various issues.  And I do think you're probably right that

25   they're all interconnected and that there is a need for mental

Colloquy

1   health and substance abuse treatment.  But my concern is that

2   the defendant has indicated that -- he has denied engaging in

3   any drug treatment programs.  It's unclear whether or not those

4   programs would be successful.

5           The proposal of him having -- living basically alone

6   in an apartment, which was what I understood you to be saying,

7   does not provide the Court with sufficient assurance that he

8   wouldn't have a bad day and engage in conduct similar to the

9   conduct that was described in the complaint and in the

10  detention memo.  And although I hear you that there's no

11  evidence in the record that he has followed through with these

12  threats yet, these threats were future-looking.  They were

13  threats focused on a festival that is scheduled to occur in a

14  couple of weeks based on the information in the complaint and a

15  very specific and pointed threat at a victim pertinent to

16  whether or not he ended up arrested in connection with this

17  case.

18          And absent some sort of treatment program where he is

19  supervised and with structural supports, it's hard to imagine a

20  set of conditions that would provide the Court with the

21  requisite assurance that he would not pose a danger to the

22  specific victims in this case, the community, and also to

23  himself, Ms. Hirozawa.  You yourself acknowledged the defendant

24  is sort of heavily engaged in -- there's several issues that

25  he's working through right now.



Colloquy

1          And I'm sympathetic to your position and I'm

2     sympathetic to your circumstances, Mr. Swift.  I really am.

3     But prior to your being able to be released, I think that the

4     Federal Defenders and the social work team should think hard

5     and look into options that would provide you with sufficient

6     structural support that you could -- there would be more

7     assurance for the Court that you would not pose a danger to the

8     victims in this case, to the community, and to yourself.

9          I'm not sure exactly what that package would look

10    like, but the package that was presented today, Ms. Hirozawa,

11    most respectfully, doesn't cut it.  I also note that in the

12    pre-trial services report, there is an indication that the

13    defendant's mother would have been willing to serve, as

14    somebody told me, it was -- I think it was in the pre-trial

15    services report --  willing to serve as a third-party

16    custodian.  But I don't think that there's sufficient nexus in

17    their relationship, given their living circumstances right now,

18    for her to provide the requisite supervision and assurance to

19    the Court.  The pre-trial services report also indicated that

20    she was unaware that he used illicit substances or alcohol.  If

21    she's that disconnected from his current circumstances, I don't

22    think she would be an appropriate third-party custodian as

23    their relationship is right now.  If circumstances were to

24    change, were you to determine that she should -- that they

25    would live together or with electronic monitoring, other

Colloquy

1    things, I don't know.  There may be a set of circumstances that

2    would provide the Court with sufficient assurance, but the

3    package that's been proposed today is not it.

4           That being said, I do find that the defendant -- there

5    is a serious risk that the defendant poses a danger to the

6    community.  And the Government has presented clear and

7    convincing evidence of that risk.  So the -- any bail package

8    that the defendants would present in the future would need to

9    overcome that finding and provide sufficient assurance that he

10   would both return to court and not pose a danger to himself or

11   others.  That being said, I will give leave to come back, but I

12   do make those findings.

13          Mr. Rein, is there anything else that I should take up

14   today?

15          MR. REIN:  No, Your Honor.

16          THE COURT:  What's the Government's position on

17   preliminary hearing?  Have you discussed --

18          MR. REIN:  We haven't discussed a way we can -- just

19   briefly, would -- is defendant prepared to waive a preliminary

20   hearing?

21          MS. HIROZAWA:  Your Honor, we are prepared to waive a

22   preliminary hearing today to permit discussions with the

23   Government regarding the evidence and to allow me to review

24   evidence with Mr. Swift.

25          THE COURT:  Okay.



Colloquy

 1          So Mr. Swift, just to make sure you understand what's

 2   going on, you have the right to what's called a preliminary

 3   hearing.  That's a hearing at which the Government would have

 4   the burden to show that there is probable cause to believe that

 5   the crime that you're being charged with was committed and that

 6   you were the person that committed it.

 7          At the hearing, you or your counsel would be entitled

 8   to cross-examine any witnesses or introduce evidence.

 9   Normally, that hearing would be scheduled within fourteen days

10   from today.  But what often happens in this district is the

11   Government chooses to indict rather than go forward at the

12   preliminary hearing.  And if there is an indictment in the

13   case, there would be no preliminary hearing.  Do you understand

14   all that, Mr. Swift?

15          THE DEFENDANT:  Not at all.

16          THE COURT:  Why don't you take a minute to talk to Ms.

17   Hirozawa.

18      (Pause)

19          MS. HIROZAWA:  Thank you, Your Honor.

20          THE COURT:  All right.

21          So Mr. Swift, now that you've had an opportunity to

22   talk with your attorney a little bit more about the preliminary

23   hearing, do you have a better understanding of it?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Okay.  And do you agree with your counsel

Colloquy

1    that you are going to waive the preliminary hearing?

2              THE DEFENDANT:  Yes.  Yes, Your Honor.

3              THE COURT:  Okay.  Thank you.

4              Is there anything other than the 5(f) order that I

5    should take up today, Mr. Rein?

6              MR. REIN:  I don't believe so, Judge.

7              THE COURT:  Anything further, Ms. Hirozawa?

8              MS. HIROZAWA:  Not at this time, Your Honor.

9              THE COURT:  Thank you.

10             So now, Mr. Swift, I have something to tell the

11   Government, okay?

12             I direct the prosecution to comply with its

13   obligations under Brady v. Maryland and its progeny to disclose

14   to the defense all information, whether admissible or not, that

15   is favorable to the defendant, material, either to guilt or to

16   punishment, and known to the prosecution.  Possible

17   consequences for noncompliance may include dismissal of

18   individual charges or the entire case, exclusion of evidence,

19   and professional discipline or court sanctions on the attorneys

20   responsible for any violation.  I will be entering a written

21   order more fully describing this obligation and the possible

22   consequences of failing to meet it.  And I direct the

23   prosecution to review and comply with that order.  Mr. Rein,

24   does the prosecution confirm that it understand its obligations

25   under Brady and Rule 5(f) and will fulfill them?



Colloquy

1          MR. REIN:  Yes, Judge.  The Government takes these

2    obligations very seriously and will comply.

3          THE COURT:  Thank you.

4          So as noted, we will enter a written order on the

5    docket later today.

6          And Ms. Hirozawa, is there anything else, anything

7    you'd like us to communicate to the MDC?

8          MS. HIROZAWA:  Your Honor, I think if the MDC could be

9    directed to provide psychiatric treatment to Mr. Swift, that

10   would be greatly appreciated.  I recognize that he will be in a

11   quarantine unit, at least initially, but I do think it would be

12   helpful for him to meet with a psychiatrist and not simply -- I

13   know there's a medical director who is not a licensed

14   psychologist or a psychiatrist and sometimes prescribes

15   medications.  I think in Mr. Swift's case, it would be helpful

16   if he met with specifically a licensed psychiatrist.

17         THE COURT:  Thank you.

18         Mr. Chin, can we enter an MDC medical order to request

19   that they have him reviewed by the psychiatrist?

20         THE CLERK:  Yes.

21         THE COURT:  Thank you.

22         Thank you, Ms. Hirozawa.

23         Mr. Rein, anything final?

24         MR. REIN:  No, Your Honor.

25         THE COURT:  Ms. Hirozawa, is there anything else?



                                Colloquy

1               MS. HIROZAWA:  Nothing further at this time.  Thank

2      you, Your Honor.

3               THE COURT:  Thank you.

4               (Proceedings concluded at 4:12 o'clock, p.m.)

5                              *  *  *  *  *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



(973) 406-2250 | operations@escribers.net | www.escribers.net

C E R T I F I C A T I O N

I, Rachel Wiley, court-approved transcriber, do hereby certify the foregoing is a true and correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____          August 23, 2022

Rachel Wiley, CDLT-251          _____

          DATE

eScribers, LLC
7227 North 16th Street
Phoenix, AZ 85020
www.escribers.net